The Honorable James P. Donohue

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>DICKSON V. LEE,<br>    Defendant. | Case No. CR14-24RAJ<br><br>**Motion to Reopen Detention Hearing and Revoke Detention Order**<br><br>Clerk's Action Required:<br>Note for Motion May 16, 2014<br><br>Oral argument requested |

## MOTION

Defendant Dickson Lee, by his attorney Russell M. Aoki of Aoki Law PLLC, respectfully asks the Court to reopen the detention hearing held April 1, 2014, and revoke its Detention Order (Dkt. No. 14) and the Order Continuing Detention (Dkt. No. 23). Mr. Lee makes this motion under 18 U.S.C. § 3142(f).

Mr. Lee is the founder of L&L Energy, Inc., and until recently its face in China. His detention has severely compromised crucial relationships between the multimillion-dollar company and its Chinese business partners and customers. Without Mr. Lee's assistance in transitioning to new leadership, L&L Energy may be unable to protect the company's thousands of investors from irreparable harm because of the company's inability to fulfill its commitments or continue operations.



720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com

# ARGUMENT

## A. The April 1 detention order was based on a finding Mr. Lee had cut ties to L&L Energy and lacked ties to the United States

The Bail Reform Act of 1984 requires a defendant be released pending trial unless no condition or combination of conditions will reasonably assure their appearance and protect the community. 18 U.S.C. § 3142(e); *United States v. Hir*, 517 F.3d 1081, 1085–86 (9th Cir. 2008). Pretrial release is to be determined in consideration of (1) the nature and circumstances of the offence, (2) the weight of evidence, (3) the defendant's history and characteristics, and (4) the nature and seriousness of any danger posed by the defendant. 18 U.S.C. § 3142(g); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). Only in rare circumstances should release be denied. *United States v. Townsend*, 897 F.2d 989, 993–94 (9th Cir. 1990). Doubts regarding the propriety of release should be resolved in favor of the defendant. *Id.* at 994. The mere opportunity to flee does not justify detention. *United States v. Gentry*, 455 F. Supp. 2d 1018, 1032 (D. Ariz. 2006).

This Court ordered Mr. Lee detained based on findings that Mr. Lee, though a United States citizen, had few ties to the United States other than through L&L Energy, and his resignation from the company had severed those ties as well. Detention Order at 1–2. In fact, L&L Energy still has a pressing need for Mr. Lee's help despite his resignation, and in turn Mr. Lee's personal and financial interests are still entwined with his former company.

## B. Mr. Lee has strong incentives to remain in Seattle and enable L&L Energy to survive his departure

### 1. L&L Energy depends on relationships formed by Mr. Lee

Doing business in China depends on partnering with local businesses and cultivating personal relationships. *See generally* I.H.T. Bus. Navigator, *Business Etiquette for Hong Kong and the Mainland*, INT'L HERALD TRIB. (Dec. 7, 2010) at



720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com

b1.[1] Mr. Lee, although a U.S. citizen, is well-versed with doing business in China. He has developed relationships with key members of Chinese-based companies and officials, and is familiar with regulations governing coal mining. He is the face of L&L Energy and is well respected because of his cultural awareness and extensive knowledge of the coal-mining industry. L&L Energy's directors are highly qualified, independently successful mining and business professionals, *see* Ex. 1 to Declaration of Russell M. Aoki, but they are not parties to relationships developed between Mr. Lee and crucial players to the company's continued success. Below are a few examples of L&L Energy's need for Mr. Lee's help:

**Existing business partners.** L&L Energy, through Mr. Lee, has partnered with several regional coal-mining companies and related enterprises. The business arrangements with at least one such partner are based on personal relationships with Mr. Lee, and have become uncertain in his absence. L&L Energy's directors have travelled to China on short notice to try and quell this uncertainty. It would help ensure a productive meeting if Mr. Lee could speak to L&L Energy board members and representatives of the other company over the phone, and make introductions between the parties. This would help preserve the continuity of L&L Energy's valuable relationship with this company.

**Potential business partners.** At the time of his arrest, Mr. Lee was midway through negotiations with a potential new business partner. L&L Energy does not know how far these negotiations had progressed, or what the agreed terms may have been. L&L Energy has asked for Mr. Lee's help in informing them about the state of negotiations and introducing them and L&L Energy's staff to their counterparts in this other company.

[1]*Available at* http://www.nytimes.com/2010/12/07/business/global/07iht-busnav.html.
Motion to Reopen Detention Hearing and Revoke Detention Order
Page 3 of 7



b1.[1] Mr. Lee, although a U.S. citizen, is well-versed with doing business in China. He has developed relationships with key members of Chinese-based companies and officials, and is familiar with regulations governing coal mining. He is the face of L&L Energy and is well respected because of his cultural awareness and extensive knowledge of the coal-mining industry. L&L Energy's directors are highly qualified, independently successful mining and business professionals, *see* Ex. 1 to Declaration of Russell M. Aoki, but they are not parties to relationships developed between Mr. Lee and crucial players to the company's continued success. Below are a few examples of L&L Energy's need for Mr. Lee's help:

**Existing business partners.** L&L Energy, through Mr. Lee, has partnered with several regional coal-mining companies and related enterprises. The business arrangements with at least one such partner are based on personal relationships with Mr. Lee, and have become uncertain in his absence. L&L Energy's directors have travelled to China on short notice to try and quell this uncertainty. It would help ensure a productive meeting if Mr. Lee could speak to L&L Energy board members and representatives of the other company over the phone, and make introductions between the parties. This would help preserve the continuity of L&L Energy's valuable relationship with this company.

**Potential business partners.** At the time of his arrest, Mr. Lee was midway through negotiations with a potential new business partner. L&L Energy does not know how far these negotiations had progressed, or what the agreed terms may have been. L&L Energy has asked for Mr. Lee's help in informing them about the state of negotiations and introducing them and L&L Energy's staff to their counterparts in this other company.

[1]*Available at* http://www.nytimes.com/2010/12/07/business/global/07iht-busnav.html.



**Customers.** L&L Energy has approximately $100 million in receivables on its balance sheet, held by distributors and customers who have dealt with the company primarily or exclusively through Mr. Lee. Without Mr. Lee's assistance, L&L Energy may have difficulty timely collecting these accounts.

## 2. L&L Energy needs Mr. Lee's out-of-custody assistance to ensure the continuity of these relationships

As L&L Energy's counsel noted at the last hearing, the board of directors takes the allegations against Mr. Lee very seriously and recognizes his conduct has jeopardized the company's future. For this reason they accepted Mr. Lee's resignation. However, L&L Energy will be disadvantaged without Mr. Lee's continued participation for the near future because he was involved in so many aspects of the company's business. L&L Energy will not fully benefit from relationships formed by Mr. Lee unless Mr. Lee participates in introducing and vouching for the person or people who will step in for him. Mr. Lee would also need to prepare L&L Energy's new leadership and negotiators on pending deals and train them to deal with their counterparts. This transition will likely take time and require extensive real-time communication. Detention precludes the access to Mr. Lee L&L Energy needs.

## 3. Mr. Lee retains greater ties to L&L Energy and the Seattle area than were revealed at the April 1 hearing

This Court recognized that ties to L&L Energy would incent Mr. Lee to remain in the United States, *see* Detention Order at 2, but mistakenly concluded Mr. Lee has severed those ties. In fact, he retains strong financial and emotional connections.

- Though Mr. Lee did step down from his leadership role, he remains a significant investor, recently buying $1 million of L&L Energy's stock.

- Mr. Lee is personal guarantor on bank loans to L&L Energy worth millions of dollars. Because many of these loans are from East West Bank, which operates in China and Taiwan, he could not avoid responsibility by

Motion to Reopen Detention Hearing and Revoke Detention Order
Page 4 of 7



720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com

fleeing to these countries. Defaulting on notes in China could lead to Mr. Lee's arrest.

- Mr. Lee founded the company now known as L&L Energy 19 years ago. The company's success is a source of pride; its failure would be a deep hurt.

As discussed, L&L Energy's survival depends on Mr. Lee's continued assistance. Flight would imperil the company and injure Mr. Lee both financially and emotionally.

Mr. Lee has strong ties to the local business and civic community. Lo Yu Sun, owner of the China Harbor restaurant, has known Mr. Lee for ten years. He writes:

> I write to support my friend, Dickson Lee. … Dickson and I are both part of the Seattle business community. We play golf together.
>
> Dickson is very involved in local politics. My restaurant has hosted many political fundraisers with Dickson over the years …. Dickson believed in these [political candidates] and wanted to support the community by helping elect good leaders.
>
> Dickson has spent many years of his life living here and building his company. I don't know anything about the subject of this case, but believe Dickson will deal with it straightforwardly instead of jeopardizing his reputation by going against a court order. I know Dickson as a man you can trust to do what he says. I believe he will appear in court when required and follow any conditions you order.

Letter from Lo Yu Sun (Ex. 2 to Aoki Decl.).

Yvonne Mei, Senior Vice Chair of the nonprofit International Leadership Foundation, has known Mr. Lee for eight years. She writes:

> It is my pleasure to be a reference for Dickson Lee. … The Foundation secures internships for 20 to 30 high school students around the country to work at federal agencies in Washington, D.C. Mr. Lee has been instrumental in helping raise funds for this important organization where the cost for each student is typically $10,000 to $15,000. Because of his help, many students gain important work experience, which helps them gain admission into college.

AOKI LAW PLLC
720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com

> Through the years, I have found Mr. Lee to be a reliable and
> responsible person who always delivers what he says he
> will. I believe Mr. Lee will comply with any court conditions
> imposed pertaining to his release from detention.

Letter from Yvonne Mei (Ex. 3 to Aoki Decl.). In recognition of his "commitment to strengthening" the United States through volunteer service, in 2011 Mr. Lee received a presidential Volunteer Service Award. Ex. 4 to Aoki Decl. And in 2008, the U.S. Department of Commerce awarded him a Certificate of Appreciation for his contribution and Support to the Asian American business community. Ex. 5 to Aoki Decl.

In addition to this evidence of local ties, and those already considered by the Court (including Mr. Lee's two Kent houses), Mr. Lee's health gives him reason to remain in the area. Mr. Lee has a heart condition and a herniated disk. Though he has sought treatment for these conditions while in detention, if released pending trial he could continue to receive treatment through his own doctors rather than at the expense of the federal government.

## CONCLUSION

Mr. Lee has strong and lasting ties to the United States and a good reputation built on decades of work in the local business community. More importantly, he retains strong emotional and financial ties to L&L Energy. Without Mr. Lee's assistance for the near future, assistance he could only provide outside of detention, L&L Energy, its employees, and its thousands of investors will likely suffer significant financial harm. Mr. Lee has known of the Government's criminal investigation for years, but has always returned to his home here in Washington. Considering his strong incentives against flight, detention is unnecessary to ensure Mr. Lee's future appearance. Mr. Lee submits surrendering his passport, electronic monitoring, regular Pretrial Service check-ins, or all three would more than suffice as safeguards. Because 18 U.S.C. § 3142(e) mandates pretrial release unless no release conditions

AOKI LAW PLLC
720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com

offer reasonable assurances, Mr. Lee asks the Court to reopen the detention hearing and revoke the detention order.

Dated this 8th day of May 2014.

By:

*s/ Russell M. Aoki*
Russell M. Aoki, WSBA No. 15717
Attorney for Dickson Lee
AOKI LAW PLLC
720 Olive Way, Suite 1525
Seattle, WA 98101
T: 206 624-1900
F: 206 442-4396
russ@aokilaw.com



720 Olive Way, Suite 1525, Seattle, WA 98101
T: 206 624-1900 F: 206 442-4396
aokilaw.com