Hon. Richard A. Jones

FILED ___ ENTERED
LODGED ___ RECEIVED

SEP 23 2014

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DICKSON LEE, <br><br> Defendant. | NO. CR14-024RAJ <br><br> **PLEA AGREEMENT** |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Katheryn Kim Frierson, Assistant United States Attorney for said District, Dickson Lee, and his attorney, Russell Aoki, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c):

1. **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in a Superseding Information.

2. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to two counts of Securities Fraud, as charged in Count 1 and Count 2, both in violation of Title 18, United States Code, Section 1348.

Plea Agreement/ - 1
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

3. **Elements of the Offense.** The elements of the offense of Securities Fraud, as charged in both Count 1 and Count 2, in violation of Title 18, United States Code, Section 1348, are as follows:

First, the defendant knowingly executed a scheme or plan to defraud or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

Second, the scheme or plan to defraud or to obtain money or property was in connection with a security of a publicly traded company, specifically L&L Energy, Inc.;

Third, the statements made or facts omitted as part of the scheme or plan were material; and

Fourth, the defendant acted with the intent to defraud.

4. **The Penalties.** Defendant understands that the statutory penalties applicable to the offense of Securities Fraud, as charged in Count 1 and Count 2, are as follows: For each count, a maximum term of imprisonment of up to 25 years, a fine of up to $250,000, a period of supervision following release from prison of up to 5 years, and a mandatory special assessment of $100 dollars. If a probationary sentence is imposed, the probation period can be for up to five (5) years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This

Plea Agreement/ - 2
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant further understands that a consequence of pleading guilty may include the forfeiture of certain property either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

   b. The right to a speedy and public trial before a jury of his peers;

   c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

   d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

   e. The right to confront and cross-examine witnesses against Defendant at trial;

   f. The right to compel or subpoena witnesses to appear on his behalf at trial;

   g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

   h. The right to appeal a finding of guilt or any pretrial rulings.

6. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

Plea Agreement/ - 3
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offenses:

    a. At all times relevant to the charged offenses, L&L Energy, Inc. (hereinafter, "L&L") was a public reporting company subject to the United States Securities and Exchange Commission's (the "SEC") periodic filing requirements pursuant to a registration under Section 12 of the Securities Exchange Act of 1934. L&L shares were also publicly traded. In 2008, L&L's stock was quoted on the Over-the-Counter Bulletin Board ("OTCBB"). L&L decided to upgrade its trading status to a national stock exchange. In February 2010, L&L commenced trading on the NASDAQ under the ticker symbol "LLEN." L&L maintained its U.S. headquarters in Tukwila, Washington.

    b. DICKSON LEE was the Chief Executive Officer ("CEO") of L&L. LEE has held the office of CEO for most of L&L's history. In July 2007, LEE voluntarily resigned the title of CEO, but in truth retained day to day control over the company. In August 2008, LEE formally reassumed the title of CEO.

    c. **Count 1**: Beginning sometime in 2008, LEE sought to have L&L stock qualify for listing on a national exchange, such as the NASDAQ. In order to do so, LEE was aware that L&L had to maintain compliance with SEC reporting requirements, including providing with each annual and quarterly report certifications by the CEO and the Chief Financial Officer ("CFO") that, among other things, attested to the accuracy of the reports and assured the public that any fraud involving management have been disclosed. These certifications are known as Section 302 and Section 906 Certifications.

    d. Sometime in May or June 2008, after the resignation of L&L's previous CFO, N.L., a Hong Kong resident and a prior employee of L&L, was offered the position of interim CFO. In July 2008, N.L. declined to accept the job. Thereafter, N.L. did no work for L&L in any capacity.

    e. After July 2008, however, LEE continued to make and caused to be made false representations that N.L. was L&L's acting CFO. In furtherance of the

Plea Agreement/ - 4
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

scheme, LEE submitted and caused to be submitted to the SEC from L&L's Tukwila office the following L&L annual and quarterly reports containing false and fraudulent representations about N.L. and her work as CFO, including false CFO Section 302 and 906 Certifications that were purportedly signed by N.L., when, in fact, N.L. had no involvement with the annual and quarterly filings in any capacity and had not signed any Section 302 or 906 Certifications:

| Date of Filing | Submission |
| --- | --- |
| Aug 14, 2008 | L&L Annual Report (Form 10-K) for fiscal year ended April 30, 2008 |
| Sept 15, 2008 | L&L Quarterly Report (Form 10-Q) for quarter ended July 31, 2008 |
| Dec 22, 2008 | L&L Quarterly Report (Form 10-Q) for quarter ended October 31, 2008 |
| March 23, 2009 | L&L Quarterly Report (Form 10-Q) for quarter ended January 31, 2009 |

f.   In about May 2009, N.L. discovered that L&L had submitted false annual and quarterly reports with the SEC regarding her role. N.L. contacted LEE and threatened to report her findings to the SEC. On about July 30, 2009, LEE entered into a settlement agreement with N.L. whereby in exchange for her silence regarding the false filings, L&L agreed to pay her money and stock owed to her by the company for past work.

g.   Shortly after signing the agreement, LEE caused the filing of L&L's annual report for the fiscal year ended April 30, 2009, in which the company failed to disclose the truth about N.L., failed to disclose the existence of the settlement agreement with N.L., and furthermore, included a certification by LEE in which he falsely certified that he had disclosed all fraud involving management.

Plea Agreement/ - 5
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     h.    Finally, in September 2009, L&L submitted its application for listing
2  on the NASDAQ. As part of the application process, NASDAQ requested that L&L
3  confirm in writing that the company was in compliance with all SEC reporting
4  requirements, including the submission of all section 302 and 906 certifications. On
5  approximately November 19, 2009, LEE responded in writing and falsely assured
6  NASDAQ that the company was in compliance. As a result, in February 2010, L&L was
7  accepted for listing and debuted on the NASDAQ.

8     i.    On March 13th and 14th of 2013, LEE was deposed, under oath, by
9  attorneys from the SEC in connection with an investigation into L&L's financial
10 reporting. During the deposition, LEE was asked whether N.L. indeed performed duties
11 of CFO for L&L during the years 2008 and 2009. LEE knowingly and falsely testified
12 that N.L. did perform the duties of a CFO for L&L during 2008 and 2009.

13    j.    **Count 2**: Beginning sometime in early 2011, L&L was in need of
14 cash for acquisition costs and company operations. DICKSON LEE explored the
15 possibility of raising the cash by simply selling on the market L&L's own Treasury
16 shares as well as his personal shares. On or about May 18, 2011, however, L&L was
17 served with a subpoena from the SEC seeking records relating to the Commission's
18 investigation of L&L and its financial reporting. Subsequently, LEE was advised that
19 neither he nor the company could sell shares to investors without first disclosing to the
20 public the fact that L&L had received an SEC subpoena and was subject to an SEC
21 investigation.

22    k.    L&L, however, chose not to disclose publicly the existence of the
23 subpoena. Instead, LEE, thereafter, devised a scheme and artifice to defraud by issuing
24 and selling L&L stock while at the same time evading the need for disclosure.
25 Specifically, LEE directed a trusted L&L employee, C.T., to recruit a number of China-
26 based individuals who would be willing to receive L&L shares in their names for the sole
27 purpose of selling those shares and generating cash for L&L.

28

Plea Agreement/ - 6
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1.    Once C.T. located such individuals, LEE authorized and caused L&L to issue brand-new shares or transfer existing L&L Treasury stock to them. When these third-parties received the shares, they sold them pursuant to C.T.'s instructions on the exchange through brokerage accounts opened in their names and returned the proceeds to L&L to be used for operational expenses, including executive salaries. At no point during the period of time when these third parties were selling L&L shares did LEE or L&L disclose the existence of the SEC subpoena and investigation to the investing public. Nor did LEE or L&L disclose the fact that LEE had ultimately directed these sales.

m.    The evidence shows that in just the period beginning May 2011 and continuing through March 2012, LEE authorized and caused the fraudulent transfer and issuance of approximately 730,000, L&L shares to third parties for the sole purpose of selling them on the market to generate proceeds for the cash-strapped company. In furtherance of the scheme and in order to execute the scheme, LEE furthermore caused false and fraudulent records to be created on L&L's books, accounts and records regarding the reasons for these share issues or transfers in order to deceive others as to the true reason for these transactions. Specifically, approximately 730,000 L&L shares issued or transferred to the third parties during L&L's fiscal year ended April 2012, were falsely and fraudulently recorded in L&L books and accounts as having been issued or transferred as compensation for services or in return for private placement investments, whereas, as LEE knew or should have known, none of the individuals who received these shares provided any services or paid any money in return for the shares.

8.    **United States Sentencing Guidelines.** Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the

Plea Agreement/ - 7
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

    a.     The Court will determine applicable Defendant's Sentencing Guidelines range at the time of sentencing;

    b.     After consideration of the Sentencing Guidelines and the factors in 18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the maximum term authorized by law;

    c.     The Court is not bound by any recommendation regarding the sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Department, or by any stipulations or agreements between the parties in this Plea Agreement; and

    d.     Defendant may not withdraw his guilty plea solely because of the sentence imposed by the Court.

9.     **Sentencing Factors**. The parties agree that the following Sentencing Guidelines calculation applies in this case:

    a.     The base offense level is 7 pursuant to USSG § 2B1.1(a)(1);

    b.     Pursuant to USSG § 2B1.1(b)(1)(A), because determining the actual amount of loss is too complex and impractical given the facts, the parties agree and stipulate solely for purposes of calculating the Sentencing Guidelines that no additional upward adjustment is warranted for loss;

    c.     Pursuant to USSG § 2B1.1(b)(2)(c), the base offense level is increased by 6 levels because the offenses involved more than 250 shareholder victims;

Plea Agreement/ - 8
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         d.      Pursuant to USSG § 2B1.1(b)(10), the base offense level is further increased by 2 levels because the offenses involved sophisticated means;

        e.      Pursuant to USSG § 2B1.1(b)(19)(A), the base offense level is further increased by 4 levels because the offenses involved violations of securities laws and, at the time of the offense, the defendant was an officer of a publicly traded company;

        f.      Pursuant to USSG § 3B1.1(a), the base offense level is further increased by 4 levels because the defendant was an organizer of criminal activity and it was extensive; and

        g.      Pursuant to USSG § 3C1.1, the base offense level is further increased by 2 levels because the defendant obstructed the administration of justice by falsely testifying at a deposition conducted by the United States Securities and Exchange Commission.

The United States agrees and stipulates that no other Sentencing Guidelines enhancements apply in this case. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

10. **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **No Agreement as to Sentencing Recommendation.** Defendant understands that although the parties are in agreement as to the applicable Sentencing Guidelines range calculation, the parties are free to recommend any sentence and are not

Plea Agreement/ - 9
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

bound by the agreed upon Sentencing Guidelines range. In particular, the Defendant understands that the United States expects to ask for a sentence above the agreed upon Sentencing Guidelines range based, in part, on the fact that in this case, the Sentencing Guidelines do not adequately reflect the severity of the offense as measured by monetary loss. Defendant understands, furthermore, that at the time of sentencing, the Court is free to reject the recommendation of the parties and is free to sentence in accordance with the law, including up to the maximum afforded by statute.

12. **Restitution.** The parties agree and the United States will recommend that restitution is not applicable in this case because determining complex issues of fact related to identifying particular victims and the amount of those victims' losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.

13. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

Plea Agreement/ - 10
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

15. **Waiver of Appeal.** In addition to the right to appeal any pretrial rulings which are waived by a plea of guilty, as part of this Plea Agreement and on the condition that the Court imposes a custodial sentence that is no greater than 60 months, or is otherwise within or below the Sentencing Guidelines range that is determined by the Court at the time of sentencing, Defendant waives to the full extent of the law:

    a. Any right conferred by Title 18, United States Code, Section 3742 to appeal the sentence, including any restitution order imposed; and

Plea Agreement/ - 11
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

       b.    Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation.

This waiver, however, does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

16. **Voluntariness of Plea.** Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty.

17. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

///

///

///

Plea Agreement/ - 12
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

18. **Completeness of Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 23rd day of September, 2014.

_____
DICKSON LEE
Defendant

_____
RUSSELL AOKI
Attorney for Defendant

_____
KATHERYN KIM FRIERSON
Assistant United States Attorney

Plea Agreement/ - 13
Dickson Lee, CR 14-024RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970